GERMAN v. CAMBURN.

SPECIFIC PERFORMANCE — CONTRACT TO EXECUTE MUTUAL WILLS —EVIDENCE—SUFFICIENCY.

On a bill to enforce specific performance of an alleged agreement between husband and wife to dispose of their property in accordance with the terms of wills prepared for mutual execution at the time of the execution by the wife of the one prepared for her, evidence examined, and *held*, not to show that the husband's will was the consideration for the execution by the wife of her will, but rather was a will which he prepared for execution to stand as his will in case she survived him.

Case made from Lenawee; Chester, J.    Submitted June 18, 1908.  (Docket No. 83.)    Decided September 15, 1908.

Bill by Willard B. German and Ernest L. German against Thomas A. Camburn, executor of the last will and testament of Albert Camburn, deceased, and others, to enforce the specific performance of a contract.    From a decree dismissing the bill, complainants appeal.    Affirmed.

*Smith, Baldwin & Alexander*, for complainants.

*Bird & Sampson*, for defendants.

MOORE, J.    The complainants are cousins of the first wife of Albert Camburn, deceased.    Her maiden name was German.    Margaret J. Stout was a sister of Albert Camburn.    The defendants William and Alma S. Camburn were his nephew and niece.    This bill was filed to enforce specific performance of a contract which, it is claimed by complainants, was entered into between Albert Camburn and his wife, Alvira, on the 25th day of April, 1883, when they made mutual wills.    It is the claim of complainants that, at the time the wills were made,

personal property passed, and Mrs. Camburn delivered the deed to 20 acres of land referred to later to Mr. Camburn; that an irrevocable agreement was made which brings the case within *Carmichael* v. *Carmichael,* 72 Mich. 76 (1 L. R. A. 596). It is the claim of defendants that what was done did not make an irrevocable agreement, that the deed was delivered in 1870, and that what was done did not bring the case within the *Carmichael Case.* After a hearing in open court before the circuit judge, he dismissed the bill of complaint. The case is here upon appeal.

We agree with the solicitors for the respective parties that the pivotal question is one of fact, and not of law. There are certain important facts that are well established which are as follows: Prior to 1851 Albert Camburn married Alvira German, the daughter of William B. German. She had a brother whose name was Hubbard German, who, all parties are agreed, was a spendthrift, and who gave his father and relatives a good deal of trouble before his death. Albert Camburn and his wife settled upon a piece of comparatively wild land owned by William B. German. There were 80 acres in the parcel where they lived, and 20 acres in another parcel. This land is variously estimated by the witnesses as worth at that time from $5 to $12 an acre. Albert Camburn sold 40 acres of land, for what price does not appear, which he received from his father, and put the proceeds into a house upon the 80 acres. He and his wife proceeded to clear the farm, and made their home thereon until after the death of the wife. In April, 1851, William B. German made a will containing the following provisions:

"*First.* I give to my daughter, Alvira Camburn, and to the heirs of her body, all and singular that certain tract or parcel of land situate in the town of Franklin aforesaid, and known as the east half of the southeast quarter of section thirty, in town five south, of range three east, containing eighty acres of land, more or less; and in case of her death without issue of her body then living, then I

give and bequeath the same to her husband, Albert Camburn, his heirs and assigns forever.

"*Second.* I further give, devise and bequeath to my daughter, Alvira Camburn, twenty acres of land situate in Franklin, aforesaid, and described as follows," etc.

Hubbard R. German was named in the will as residuary legatee. William B. German died, and his will was duly probated in December, 1864. In September, 1870, Alvira Camburn made a deed of the 20 acres to her husband. It was acknowledged before the judge of probate September 16, 1870, and, following the seal and signature of Mrs. Camburn, appeared the following:

"Signed, sealed and delivered in the presence of
        "R. R. BEECHER,
        "C. D. HANKS."

This deed was recorded May 3, 1883, and was found among the papers of Albert Camburn after his death. Mr. Camburn had a talk with Mr. Miller, a lawyer at Adrian, about drawing wills for himself and his wife. Mr. Miller drew two wills, one for Mrs. Camburn to execute, and the other for Mr. Camburn to execute. They were not executed before Mr. Miller. They were taken away by Mr. Camburn. Mrs. Camburn was not present when the wills were drawn, nor when they were taken away. Mr. Miller's recollection is that the only difference in the wills was that one was drawn to be executed by Mr. Camburn, and the other by his wife. The reasons for drawing the papers, he says, were:

"Well, the reasons he gave, I remember, whether it was that time or at some previous talk I don't remember, but I know in the talks with him about it he said that the property, which was largely a farm in the town of Franklin, came through his wife's father, Mr. German, old Deacon German, I guess they used to call him, and in case he and his wife should die without any children, as they probably would, that, unless something was done now to have the property go where they wanted it to, it would go largely or entirely, perhaps, I don't remember which, to a brother of hers, named Hubbard German.

whom I knew very well, and he said the reason of it was because he was a ne'er-do-well, an intemperate man, who has squandered his property, all he had got, and all he could get, and they didn't want him to have that, any of it.

"Mr. Camburn at this time said something to me about Dr. Maclean's treating his wife, or operating upon her. He gave that as a reason why he wanted these wills made. Said his wife's health was very uncertain, and she might have to undergo an operation; that was why he wanted it done, and she, too, wanted it done now."

Mr. Miller's testimony does not disclose that anything was said about the 20 acres of land. April 25, 1883, the night before submitting to an operation, Alvira Camburn executed a will to which Robert Carnes and his wife were witnesses. Mr. Camburn at the same time executed a will before them. It is supposed that Mr. Camburn afterwards destroyed the will executed by him, as it could not be found. Mrs. Carnes was a witness and testified to the due execution of the wills. She did not read them, nor hear them read. Mr. Miller identified the will executed by Mrs. Camburn as one of those drawn by him and taken away by Mr. Camburn. At the time these wills were made Mr. and Mrs. Camburn had no children. William B. German had a brother by the name of Smith German, who lived in the same neighborhood, and who was the father of these complainants, Willard B. and Ernest L. German and of Frances Alvira German. After the death of the child of Albert and Alvira Camburn, the proof shows they both had a great deal of affection for these complainants, and their sister Frances Alvira. The families and children were friendly.

The essential provisions of the will Mrs. Camburn executed are as follows:

"*First.* After my debts are paid, if any shall be owed by me at my death, and my funeral expenses are liquidated, I give and bequeath to my beloved husband, Albert Camburn, all my estate, both real and personal, to have and to hold the same and full control thereof so long as he shall live; and if it shall be needed or become

necessary for the comfortable support of my said husband, Albert Camburn, to use and dispose of any part of my said estate beyond the use and income thereof, then I hereby authorize him to sell, dispose of, and convey any part of my said estate that may be necessary to his support as aforesaid. The lands of which I am seised, and which are bequeathed in this my last will, are situated in said township of Franklin, and known and described as the east half of the southeast quarter of section thirty, in town five south, of range three east, being eighty acres, more or less.

"*Second.* I give, devise and bequeath, all the residue and remainder of my estate, after the death of my said husband, both real and personal, to Frances Alvira German, Willard B. German, and Ernest German, being the children of Smith German, Esq., of Franklin, and to their heirs forever, to be shared and divided among them as follows: *First.* To said Frances Alvira German all my wearing apparel; jewelry and household furniture, and the land hereinbefore described. *Second.* To said Willard B. and Ernest the remainder and residue of my personal estate not given and devised to said Frances Alvira, share and share alike. *Third.* In case said Frances Alvira shall die before my said husband, then the property devised to her shall be given to said Willard B. and Ernest, or to the survivors of them, if either said Ernest or said Willard B. shall also die before my said husband. *Fourth.* In case either said Willard B. or Ernest shall die before my said husband, then the survivor of the two shall take all that is devised to both of them."

It will be observed that the real estate mentioned in this will is the 80 acres of land, a life interest in which had been given to Mrs. Camburn, and the title in fee upon her death to Mr. Camburn by the will of William B. German, the father of Mrs. Camburn. No mention is made in the will of the 20 acres. Frances Alvira German died in 1889. Mrs. Camburn died in November, 1883, and her will was duly probated. Some years thereafter Mr. Camburn married again. There were no children the issue of this marriage, and the second wife died in November, 1889. Mr. Camburn's death occurred in 1902. Before his death he made a will, the material parts of which are as follows:

"*First.* I give, devise, and bequeath to Willard B. German twenty acres of land, described as. follows: Bounded north by road, east by land of W. N. Perkins, south by Albert Vanderpool, and west by John Tyson, on section number thirty in the township of Franklin, Lenawee county, Mich.

"*Second.* I give, devise, and bequeath to Mrs. Margaret Stout two hundred and fifty dollars, if she survives me.

"*Third.* I give, devise, and bequeath to my nephew and niece William E. Camburn and Alma S. Camburn, all the residue of my estate, both real and personal, of every name and nature whatsoever, including the sum bequeathed to Margaret J. Stout, should she die before I do."

This was duly probated.

The principal witness upon the part of the complainants was their mother. Her testimony covered a large field. She claimed to have had a talk with Mr. and Mrs. Camburn as to why the wills were made and the consideration therefor. After the proofs were all in, the court in deciding the case said:

"In the case of Willard B. German and others against Thomas M. Camburn, I think I would suggest that the only contract relation between Albert Camburn and Alvira Camburn, as I view the evidence here, was, *first,* that the survivor of them should have the life use and enjoyment of the other's property; *second,* that in no event should the property of either go to the person spoken of as Hub German. I do not think there was any contract between Mr. and Mrs. Camburn whereby this property should go to the children of Smith German, and that these are not mutual wills depriving either from giving the property as he or she saw fit, after the life estate had ceased. Some question was raised on the trial as to the mental competency of Mr. Camburn. I think he was mentally competent to make such a disposition of his property as he saw fit by will. With these views of the facts —of course, there are many other facts in the case—but with these views, I think that a decree should be entered here dismissing the bill."

We think the record at this time fully justified the conclusion then reached by the judge. In November, 1905,

upon the application of the complainants, the case was re-opened, and further proof was taken. In deciding the case the second time the judge recalled what he had said before, and added:

"What I said at that time I think is very applicable at this time. In addition to what I then said, I must say that I am not persuaded Mr. Camburn's will was made as a consideration for the making of Mrs. Camburn's will, nor to evidence, nor in acknowledgment of an indebtedness owing by him to Mrs. Camburn. I think his will just such a will as any husband might well make, to be carried out in case his wife outlives him, but, if she does not, then he can do with his life's earnings as he sees fit."

After a careful reading of the very remarkable testimony offered after the case was reopened, we are not surprised that the trial judge refused to change his mind about the case.

The decree is affirmed, with costs.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER. JJ., concurred.